**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERESA HANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-132-KEW |
| | ) |
| TRITON INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment filed September 8, 2006 (Docket Entry #29). This Motion is at issue, having had a timely response and reply filed. Upon review and consideration of these documents, this Court renders this ruling.

On June 21, 2005, CitiFinancial Services, Inc. ("CSI") loaned funds to Plaintiff in exchange for a security interest in her motor vehicle. Among the documents signed by Plaintiff was a Disclosure Statement, Note and Security Agreement. The agreement provides, in relevant part, that if Plaintiff as borrower obtains collateral protection coverage, she acknowledges that the insurance will protect only CSI's interest in the collateral and does not protect Plaintiff's interest. Plaintiff made application for a Collateral Protection Plan Certificate of Coverage from Defendant, which named CSI as the insured.

On July 4, 2005, Plaintiff was involved in a motor vehicle accident with another individual. The Oklahoma Traffic Collision

Report completed by law enforcement at the time of the accident indicates that the other driver possessed a policy of insurance with Progressive Insurance Company ("Progressive"). Further, the other driver was cited for DUI and was at fault in the accident.

On August 1, 2005, Defendant received a letter from Plaintiff dated July 28, 2005, making a claim under the Certificate of Coverage as a result of the damage done to her vehicle. Together with the letter, Plaintiff submitted a copy of the Oklahoma Traffic Collision Report.

The terms of the Certificate issued by Defendant provided for payment of benefits, less any amount due from a third party. Acknowledging the other driver was at fault, Defendant required either a copy of any check issued by Progressive to compensate Plaintiff for her damages or a copy of Progressive's formal denial letter.

Defendant asserts it sent a letter to CSI at its branch office located in McAlester, Oklahoma on August 4, 2005, advising that Plaintiff's claim had been received and requesting either the check or denial letter from Progressive to permit processing the claim. Although Defendant contends it sent the letter to CSI with a copy to Plaintiff, neither of these parties affirm they received Defendant's letter. Defendant contends it received no response to its letter. As a result, it alleges it sent additional letters advising of the need for the referenced documentation on August 30,

2005, September 13, 2005 and September 27, 2005. Defendant contends it sent the letters in the same manner – an original to its insured, CSI and a copy to Plaintiff by regular first class mail. Again, neither CSI nor Plaintiff has attested to the receipt of these letters. Defendant states it did not receive any response to these letters. CSI's representative testified it is possible the prior branch manager may not have put the letters in the claim file.

Plaintiff sent a letter to Defendant on September 6, 2005 after allegedly receiving no response to her July 28, 2005 letter. Defendant acknowledges receipt of this letter but states it responded with a copy of its September 13, 2005 letter, which Plaintiff states she did not receive.

As a result, Defendant sent a letter dated October 19, 2005 to CSI with a copy to Plaintiff. In this letter, Defendant informed CSI it would close its file unless it heard back from CSI within 30 days, but specifically stated that, upon receipt of the required information, the file would be reopened for additional consideration. Unlike the prior letters, CSI and Plaintiff acknowledge receipt of this letter. Indeed, Plaintiff acknowledged receipt of the aforementioned letter in a telephone conversation with CSI's representative, Ms. Eddington on October 26, 2005.

Additionally, on October 28, 2005, Plaintiff was informed by Defendant's representative in a telephone conversation of the need

for the information to allow the claim processing to move forward. Similarly, Plaintiff was informed by a CSI representative, Joy Eddington, of the need for the information in a telephone conversation on October 31, 2005 and another on November 9, 2005.

During an October 27, 2005 conversation with CSI's representative, Ms. Eddington, Plaintiff informed CSI that she would not make further payments on her note with CSI until she had received a check from Defendant on her claim. Ms. Eddington advised Plaintiff to keep her account with CSI current.

On November 28, 2005, Plaintiff asserts she submitted the required information to Ms. Eddington with CSI by facsimile through her attorney. However, Ms. Eddington denies ever receiving the information until it was provided to her by Defendant's attorney. As a result, Defendant did not receive the letter from the tortfeasor's insurance company until after this action was filed.

This action was commenced by Plaintiff on March 31, 2006, alleging Defendant breached the implied duty of good faith and fair dealing owed by an insurer by failing to conduct an adequate investigation of her claim, and employing inadequate training and failing to adopt a claims manual or written guidelines for processing claims. Upon receipt of the information Defendant required to process the claim, Defendant paid Plaintiff the amount

due under the policy on June 21, 2006[1] after the filing of this case.

Defendant filed the subject motion contending the facts in this case do not support a finding of bad faith based upon an unreasonable delay in paying Plaintiff's claim, that an adequate investigation was conducted, and that the lack of a claims manual or further training for Defendant's personnel constitutes bad faith. Defendant further challenges the propriety of punitive damages under the facts and circumstances of this case.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty

---

[1] Plaintiff's response refers to the date of payment as "June 21, 2005"; however, the copy of the check attached to Defendant's Motion reflects a June 21, 2006 date of issuance.

5

Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

On summary judgment, this Court is obligated to determine whether, under the facts of this case, Defendant's "conduct may be reasonably perceived as tortious." City Nat'l Bank and Trust Co. v. Jackson Nat'l Life Ins., 804 P.2d 463, 468-69 (Okla. 1990). "[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, . . . , and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987). This Court will address each allegation of bad faith in turn.

**A. Unreasonable Delay in Payment**

Among the duties owed by an insurer to its insured is the duty not to unreasonably withhold payment of claims. <u>Buzzard v. Farmers Ins. Co., Inc.</u>, 824 P.2d 1105, 1108-09 (Okla. 1991) citing <u>Christian v. American Home Assurance Co.</u>, 577 P.2d 899, 903 (Okla. 1977). Plaintiff first argues the delay in payment from the date when she first asserted a claim on the policy on July 28, 2005 until she received payment on June 21, 2006. An examination of the events occurring during the intervening time is required.

Clearly, conflicting evidence exists as to whether Defendant responded to Plaintiff's correspondence and whether Plaintiff or CSI actually received the letters Defendant contends it sent. Should this action turn upon this issue, summary judgment would be inappropriate. For evaluation of Defendant's Motion, however, this Court must determine whether the delay between the July 28, 2005 claim and Plaintiff's acknowledged receipt of the October 19, 2005 letter is arguably unreasonable under the prevailing case authority on bad faith. Any delay which resulted after October 19, 2005 is more attributable to either Plaintiff's or CSI's failure to send the required information to Defendant rather than any action taken or not taken by Defendant directly, since it is not disputed that Plaintiff failed to send the information to Defendant.

Certainly the basis for the request of additional information was not unfounded. Defendant's obligation to pay under the policy

7

did not become effective unless or until it was informed of the status of payment from the tortfeasor's insurance carrier. The circumstances in this case were further complicated by the fact that Plaintiff was not Defendant's insured. Rather, CSI was the named insured under the policy with regard to which Plaintiff was a beneficiary. Therefore, the direct communication occurred between Defendant and CSI and not Defendant and Plaintiff. Throughout this litigation, Defendant has never disputed Plaintiff's claim for benefits under the policy and did not, in fact, deny Plaintiff's claim at any time during the process of considering it.

To find the delay in payment as unreasonable, this Court must conclude the insurer lacked "a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005) citing Buzzard v. McDanel, 736 P.2d at 159. Simple negligence is not sufficient to confer bad faith liability to an insured. Id.

In this case, Defendant possessed a good faith belief that the policy required the submission of evidence of payment or denial of payment by a tortfeasor's insurance carrier before it could consider Plaintiff's claim. This belief was certainly justifiable since the plain language of the policy engaged coverage only "after reduction of any compensation due to the Lender by a third party."

8

While the practice of mailing letters requiring further information by regular first class mail instead of return receipt might be viewed as negligent and a procedure inviting a challenge, this Court cannot find the resulting delay as unreasonable under the circumstances nor does the evidence bear out an intentional effort by Defendant to deny payment to Plaintiff.  Indeed, even in the letter informing Plaintiff that Defendant's claim file was to be closed, Defendant stated the claim would be considered once the information required by the policy was received.  Such consideration belies a finding of an intentional effort to thwart Plaintiff's right to payment under the policy.

**B.  Adequacy of Investigation**

Clearly, a failure to investigate may give rise to a claim for bad faith under Oklahoma law, where it is shown that a more thorough investigation would have produced relevant information. *See*, Timberlake Construction Co. v. U.S.F.&G., 71 F.3d 335, 345 (10th Cir. 1993).  In this case, however, it is unclear as to what Defendant was to investigate.  The information required by the policy was uniquely in the possession of Plaintiff and Defendant could only require the information through its insured, CSI. Therefore, this Court cannot conclude further investigation by Defendant would have produced any information which would have moved the claims process further toward completion.

**C.  Failure to Train or Employ Claims Manual**

Plaintiff contends Defendant may be found to have acted in bad faith because it admittedly has no claims manual and has not trained its personnel in certain aspects of Oklahoma law in regard to the handling of claims. Specifically, Plaintiff cites to Okla. Stat. tit. 36 § 1250.5, which provides *inter alia* that the failure to "adopt and implement reasonable standards for prompt investigations of claims" constitutes an unfair claim settlement practice, if committed in violation of Okla. Stat. tit. 36 § 1250.3. This latter section expressly provides violations of § 1250.5 only constitute unfair claim settlement practices if, with regard to a particular enumerated practice

> 1. It is committed flagrantly and in conscious disregard of this act or any rules promulgated hereunder; or
>
> 2. It has been committed with such frequency as to indicate a general business practice to engage in that type of conduct.
>
> Okla. Stat. tit. 36 § 1250.3(B).

Neither of these provisions apply to the facts present in this case. Defendant's failure to utilize a written claims manual is not violative of these Oklahoma statutes. These laws do not require that any "reasonable standards" adopted be in writing or be in a formal claims manual. Moreover, Plaintiff does not indicate and this Court cannot perceive how the presence of a written manual would have altered the manner in which her claim would have been processed in this case. Further, the evidence indicates the claims representatives employed by Defendant were experienced, received

on-the-job training and were licensed by the State of Oklahoma. The failure to specifically train on bad faith cannot be said to have led to the delay which resulted in this case. While instituting a practice of mailing letters to insureds by return receipt mail might have allowed Defendant to better document its efforts to obtain required information, the practice itself did not result in a bad faith refusal to pay Plaintiff's claim.

Plaintiff also cites to the case of <u>Vining v. Enterprise Financial Group, Inc.</u>, 148 F.3d 1206 (10th Cir. 1998) in support of her contention that Defendant's actions in regard to failing to employ a written claims manual constituting an act of bad faith. This case does not persuade this Court to adopt Plaintiff's position. In <u>Vining</u>, an insurer rescinded a life insurance policy after the death of the insured, citing to representations made in the application for insurance. The surviving spouse brought an action based in bad faith and breach of contract. The court determined, *inter alia*, that the plaintiff in that case "demonstrated at trial a deliberate, willful pattern of abusive conduct by [the insurer] in handling claims under its life insurance policies" and that the insurer "engaged in a systematic, bad faith scheme of canceling policies without determining whether it had good cause to do so." <u>Id</u>. at 1214. While the case does indeed acknowledge that the insured "does not have a claims manual or any written guidelines specifying when a claim is payable or

11

not," Id. at 1211, the court did not find the lack of the manual to be an act of bad faith. Rather, it cited to this practice as indicative of the systematic denial of claims and abusive conduct of the insurer, thereby justifying the jury's bad faith determination. Nothing in the prevailing law and authorities in Oklahoma suggests that the mere failure to adopt a written manual or train employees in bad faith is itself an act of bad faith. As a result, this Court concludes Plaintiff has failed to sustain her burden of demonstrating Defendant breached its implied duty of good faith and fair dealing in the payment, investigation and adoption of standards for evaluating of Plaintiff's claim.[2]

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment filed September 8, 2006 (Docket Entry #29) is hereby **GRANTED**. As a result, judgment shall be entered in favor of Defendant Triton Insurance Company and against Plaintiff Teresa Hance.

IT IS FURTHER ORDERED that, in light of this ruling, the Pretrial Conference and jury trial of this case are hereby **STRICKEN**.

IT IS SO ORDERED this 3rd day of January, 2007.

---

[2] This Court will not address the final issue raised by Defendant in its Motion concerning the propriety of punitive damages at trial since summary judgment will be entered in favor of Defendant on the base bad faith claim.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE